# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDES VEGA, et al., | CASE NO. CV F 09-1444 LJO GSA |
| Plaintiffs, | **ORDER TO DISMISS ACTION** (Doc. 6.) |
| vs. | |
| JPMORGAN CHASE BANK, N.A., et al, | |
| Defendants. | |

## INTRODUCTION

Defendants JPMorgan Chase Bank, N.A. ("Chase") and Deutsche Bank National Trust Company ("Deutsche") seek to dismiss as meritless, lacking necessary elements and time barred pro se plaintiffs Andes Vega and Fabiola Vega's (collectively "plaintiffs'") eleven claims arising from first and second mortgage loans secured by their Tulare residence ("property"). Like many before them, plaintiffs rely on unsupported factual and legal claims which this and other Courts have rejected and continue to reject routinely. This Court addresses sua sponte F.R.Civ.P. 12(b)(6) dismissal of plaintiffs' claims on the record and VACATES the October 27, 2009 hearing set by Chase and Deutsche (collectively "defendants"). For the reasons discussed below, this Court DISMISSES this action against defendants.

## BACKGROUND

### Plaintiffs' Loans And Default

Plaintiffs are married and obtained a $252,000 first loan ("first loan") for the property and which was secured by a first deed of trust ("first DOT") encumbering the property and recorded on April 19,

1

2006.[1] The first DOT identifies Long Beach Mortgage Company ("LBMC") as the lender, trustee and beneficiary.

Plaintiffs obtained a $63,000 second loan ("second loan") for the property and which was secured by a second deed of trust ("second DOT") encumbering the property and recorded on April 19, 2006. The second DOT identifies LBMC as lender and Chicago Title as trustee and beneficiary.

After plaintiffs defaulted, a notice of default and election to sell under deed of trust ("NOD") was recorded on December 17, 2008. The NOD indicates that plaintiffs were $20,115.71 behind in payments as of December 15, 2008. The NOD states:

> The beneficiary or its designated agent declares that it has contacted the borrower, tried with due diligence to contact the borrower as required by California Civil Code 2935.5, or the borrower has surrendered the property to the beneficiary or authorized agent, or is otherwise exempt from the requirements of §2935.5.

By an assignment recorded on December 17, 2008, Chase assigned to Deutsche all beneficial interest in the first DOT. By a substitution recorded on December 17, 2008, California Reconveyance Company was substituted as trustee under the first DOT.

A trustee's sale notice was recorded on March 20, 2009 and indicates that the unpaid balance as of March 18, 2009 was $278,473.36.

### Plaintiffs' Claims

Plaintiffs filed their original complaint on March 9, 2009 in Tulare County Superior Court. Plaintiffs proceed on their operative second amended complaint ("SAC") following defendants' removal to this Court. The SAC alleges that defendants "forced" plaintiffs into the first and second loans and mislead plaintiffs to believe that plaintiffs could afford monthly payments with hopes that plaintiffs would fail to repay the first and second loans to allow defendants to "repossess" the property. The SAC alleges 11 claims which this Court will address below and seeks compensatory and punitive damages, an injunction to prohibit a trustee's sale, and declaratory relief to the effect that foreclosure of the property is unlawful.

///

---

[1] All documents regarding plaintiffs' loans and default were recorded with the Official Records of Tulare County.

# DISCUSSION

## F.R.Civ.P. 12(b)(6) Motion Standards

Defendants attack plaintiffs' claims as "uncertain and ambiguous" and for failure "to allege facts which would support a cognizable cause of action."

"A trial court may dismiss a claim sua sponte under Fed.R.Civ.P. 12(b)(6). . . . Such dismissal may be made without notice where the claimant cannot possibly win relief." *Omar v. Sea-Land Service, Inc.*, 813 F.2d 986, 991 (9th Cir. 1987); *see Wong v. Bell*, 642 F.2d 359, 361-362 (9th Cir. 1981). Sua sponte dismissal may be made before process is served on defendants. *Neitzke v. Williams*, 490 U.S. 319, 324 (1989) (dismissals under 28 U.S.C. § 1915(d) are often made sua sponte); *Franklin v. Murphy*, 745 F.2d 1221, 1226 (9th Cir. 1984) (court may dismiss frivolous in forma pauperis action sua sponte prior to service of process on defendants).

A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In resolving a F.R.Civ.P. 12(b)(6) motion, the court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 765, 767 (8th Cir. 2003) (citation omitted). A court need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc.*

*v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984).

In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.
>
> . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. (Citation omitted.)

Moreover, a limitations defense may be raised by a F.R.Civ.P. 12(b)(6) motion to dismiss. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 450 (1982). A F.R.Civ.P. 12(b)(6) motion to dismiss may raise the limitations defense when the statute's running is apparent on the complaint's face. *Jablon*, 614 F.2d at 682. If the limitations defense does not appear on the complaint's face and the trial court accepts matters outside the pleadings' scope, the defense may be raised by a motion to dismiss accompanied by affidavits. *Jablon*, 614 F.2d at 682; *Rauch v. Day and Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978).

For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003). Nonetheless, a court may consider exhibits submitted with the complaint. *Van Winkle*, 290 F.Supp.2d

at 1162, n. 2. In addition, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003). Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998). A "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)). Moreover, "judicial notice may be taken of a fact to show that a complaint does not state a cause of action." *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956); *see Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997). As such, this Court may consider plaintiffs' pertinent loan and foreclosure documents.

## Failure To Satisfy F.R.Civ.P. 8

Defendants' initial attack is that the SAC globally lacks "facts which would support a cognizable cause of action."

F.R.Civ.P. 8(d)(1) requires each allegation to be "simple, concise, and direct." This requirement "applies to good claims as well as bad, and is the basis for dismissal independent of Rule 12(b)(6)." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). "Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *McHenry*, 84 F.3d at 1180. "Prolix, confusing complaints . . . impose unfair burdens on litigants and judges." *McHenry*, 84 F.3d at 1179.

Moreover, a pleading may not simply allege a wrong has been committed and demand relief. The underlying requirement is that a pleading give "fair notice" of the claim being asserted and the "grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47-48, 78 S.Ct. 99, 103 (1957); *Yamaguchi v. United States Department of Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997). Despite the

flexible pleading policy of the Federal Rules of Civil Procedure, a complaint must give fair notice and state the elements of the claim plainly and succinctly. *Jones v. Community Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984). A plaintiff must allege with at least some degree of particularity overt facts which defendant engaged in to support plaintiff's claim. *Jones*, 733 F.2d at 649.

The SAC and each of its claims fail to satisfy F.R.Civ.P. 8. The SAC makes the redundant claim that plaintiffs are "victims of Mortgage Predatory Lending" and were "forced" into signing the loans. The SAC lacks relevant facts to support valid, cognizable legal theories. The SAC fails to give defendants fair notice of claims plainly and succinctly to warrant dismissal of plaintiffs' claims.

## Injunctive Relief

The SAC's (first) injunctive relief claim alleges that defendants "failed to properly comply with California Civil Code §2923.5 [("section 2923.5")] requiring the Trustee to file a declaration of due diligence prior to or concurrently with the filing of a Notice of Default, Notice of Substitution of Trustee or Notice of Trustee's Sale" and "failed to contact borrowers to explore option and a financial circumstance to avoid foreclosure." The SAC's prayer seeks an order to compel defendants "to cease and desist from foreclosing and/or transferring ownership" of the property.

The traditional equitable criteria for granting preliminary injunctive relief are:

1. A strong likelihood of success on the merits;
2. The possibility of irreparable injury to the moving party if injunctive relief is denied;
3. A balance of hardships favoring the moving party; and
4. Advancement of public interest.

*Textile Unlimited, Inc. v. A.BMH and Company, Inc.*, 240 F.3d 781, 786 (9th Cir. 2001) (citing *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980)).

"In this circuit, the moving party may meet its burden by demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor." *Los Angeles Mem' Coliseum Comm'n*, 634 F.2d at 1201.

As reflected throughout this order, plaintiffs fail to demonstrate a likelihood of success on the merits given dismissal of their claims. The SAC lacks an allegation of irreparable injury. The injunctive

relief claim merely alleges that plaintiffs "are victims of Mortgage Predatory Lending" and were forced into signing the loans. The NOD dispels the allegation that defendants failed to comply with California Civil Code section 2923.5.

Morever, "[e]quity will not interpose its remedial power in the accomplishment of what seemingly would be nothing but an idly and expensively futile act, nor will it purposely speculate in a field where there has been no proof as to what beneficial purpose may be subserved through its intervention." *Karlsen*, 15 Cal.App.3d at 117, 92 Cal.Rptr. 851. As such, to enjoin a foreclosure sale due to non-judicial foreclosure defects, the trustor must in good faith tender amounts to cure the default. *See Karlsen*, 15 Cal.App.3d at 117, 92 Cal.Rptr. 851. The complaint lacks allegations of a tender to cure defaults, and the injunctive relief claim appears premised on the SAC's other defective claims. The record reflects plaintiffs' inability to cure their defaults.

"Injunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted." *Shell Oil Co. v. Richter*, 52 Cal.App.2d 164, 168, 125 P.2d 930 (1942). The injunctive relief claim is doomed with the SAC's other claims.

### Wrongful Foreclosure

The SAC's (second) wrongful foreclosure claim appears to allege that defendants failed to satisfy section 2923.5, which requires a lender or its agent to attempt to contact a defaulted borrower prior to foreclosure. Section 2923.5(a)(2) requires a "mortgagee, beneficiary or authorized agent" to "contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Section 2923.5(b) requires a default notice to include a declaration "from the mortgagee, beneficiary, or authorized agent" of compliance with section 2923.5, including attempt "with due diligence to contact the borrower as required by this section."

The record reveals that the NOD included the necessary declaration to satisfy section 2923.5. The SAC alleges no cognizable claim that defendants were required to modify plaintiffs' loans in that section 2923.5 imposes no such mandate. Section 2923.5 requires only contacts or attempted contacts to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." *See* Cal. Civ. Code, § 2923.5(a)(2). An alleged section 2923.5 claim fails.

Moreover, defendants are correct that a purported wrongful foreclosure claim is premature given

there has been no foreclosure of the property. *Munger v. Moore*, 11 Cal.App.3d 1, 7, 89 Cal.Rptr. 323 (1970) (The "rule is that a trustee or mortgagee may be liable to the trustor or mortgagor for damages sustained where there has been an illegal, fraudulent or wilfully oppressive sale of property under a power of sale contained in a mortgage or deed of trust.") The wrongful foreclosure claim fails to allege a cognizable cause of action in absence of a foreclosure sale.

## **Mortgage Predatory Lending And TILA And RESPA Violations**[2]

The SAC's (third) mortgage predatory lending claims repeats the allegations that plaintiffs were misled that "they could afford to make the monthly payments," could refinance "with better loan terms," and were "forced" into signing the loans. The claim alleges that plaintiffs "believe there is more than one violation in the original LOANS documents."

The predatory lending claim is conclusory and provides defendants no notice of alleged wrongdoing. The claim points to no specific TILA or RESPA violation. The SAC lacks facts to support a TILA or RESPA violation. In addition, the claims fails to allege plaintiffs' pecuniary loss to support a RESPA violation. *See* 12 U.S.C. § 2605(f)(1)(A) ("Whoever fails to comply with this section shall be liable to the borrower . . . [for] any actual damages to the borrower as a result of the failure . . .") *Hutchinson v. Delaware Sav. Bank FSB*, 410 F.Supp.2d 374, 383 (D. N.J. 2006) ("However, alleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiffs must, at a minimum, also allege that the breach resulted in actual damages.")

Moreover, a TILA or RESPA damages claim is time barred. A TILA damages claim is subject to 15 U.S.C. § 1640(e), which provides that an action for a TILA violation must proceed "within one year from the date of the occurrence of the violation." "TILA requires that any claim based on an alleged failure to make material disclosures be brought within one year from the date of the occurrence of the violation." *Hallas v. Ameriquest Mortg. Co.*, 406 F.Supp.2d 1176, 1183 (D. Or. 2005). The limitations period runs from the date of a transaction's consummation which is the time that a consumer becomes contractually obligated on a credit transaction. *Monaco v. Bear Stearns Residential Mortgage Corp.*, 554 F.Supp.2d 1034, 1039 (C.D. Cal. 2008). The Ninth Circuit Court of Appeals noted in *Meyer v.*

---

[2] "TILA" refers to the Truth in Lending Act, 15 U.S.C. §§ 1601, et seq. "RESPA" refers to the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, et seq.

8

*Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003):

> The failure to make the required disclosures occurred, if at all, at the time the loan documents were signed. The [plaintiffs] were in full possession of all information relevant to the discovery of a TiLA violation and a § 1640(a) damages claim on the day the loan papers were signed.

A purported RESPA claim is susceptible to the one-year limitations period of 12 U.S.C. § 2614(a). The "primary ill" which RESPA seeks to remedy is "the potential for 'unnecessarily high settlement charges' caused by kickbacks, fee-splitting, and other practices that suppress price competition for settlement services. This ill occurs, if at all, when the plaintiff pays for the service, typically at the closing." *Snow v. First American Title Ins. Co.*, 332 F.3d 356, 359-360 (5th Cir. 2003) (quoting 12 U.S.C. §2601(a)).

The limitations periods for TILA and RESPA violations started no later than April 2006 when plaintiffs signed their loan documents. The March 9, 2009 filing of plaintiffs' action renders their federal statutory damages claims untimely. The face of SAC and record reveals that TILA and RESPA damages claims are time barred.

**Consumer Fraud**

The SAC's (fourth) consumer fraud claim alleges that defendants "defrauded" plaintiffs by "leading Plaintiffs to believe that they were in a financial position to afford the monthly payments and were financially solvent to qualify for the LOANS." The claim further alleges that defendants "intentionally misled Plaintiffs to induce them to obtain the LOANS so that Defendants could make a profit from loaning monies to Plaintiffs."

Defendants fault the consumer fraud claim's absence of necessary elements and specification.

F.R.Civ.P. 9(b) requires a party to "state with particularity the circumstances constituting fraud."[3] In the Ninth Circuit, "claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements." *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1141 (C.D.

---

[3] F.R.Civ.P. 9(b)'s particularity requirement applies to state law causes of action: "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1995)(italics in original)).

Cal. 2003). A court may dismiss a claim grounded in fraud when its allegations fail to satisfy F.R.Civ.P. 9(b)'s heightened pleading requirements. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). A motion to dismiss a claim "grounded in fraud" under F.R.Civ.P. 9(b) for failure to plead with particularity is the "functional equivalent" of a F.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim. *Vess*, 317 F.3d at 1107. As a counter-balance, F.R.Civ.P. 8(a)(2) requires from a pleading "a short and plain statement of the claim showing that the pleader is entitled to relief."

F.R.Civ.P. 9(b)'s heightened pleading standard "is not an invitation to disregard Rule 8's requirement of simplicity, directness, and clarity" and "has among its purposes the avoidance of unnecessary discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996). F.R.Civ.P. ((b) requires "specific" allegations of fraud "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671-672 (9th Cir. 1993) (internal quotations omitted; citing *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th Cir. 1997)). The Ninth Circuit Court of Appeals has explained:

> Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud. The time, place and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have consistently required that circumstances indicating falseness be set forth. . . . [W]e [have] observed that plaintiff must include statements regarding the time, place, and *nature* of the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient." . . . The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. . . .
>
> In certain cases, to be sure, the requisite particularity might be supplied with great simplicity.

*In Re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc) (italics in original) *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.Supp. 1297 (C.D. Cal. 1996); *see Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) ("fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged); *Neubronner*, 6 F.3d at 672 ("The complaint must specify facts as the times, dates,

places, benefits received and other details of the alleged fraudulent activity.")

As to multiple fraud defendants, a plaintiff "must provide each and every defendant with enough information to enable them 'to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with.'" *Pegasus Holdings v. Veterinary Centers of America, Inc.*, 38 F.Supp.2d 1158, 1163 (C.D. Ca. 1998) (quoting *In re Worlds of Wonder Sec. Litig.*, 694 F.Supp. 1427, 1433 (N.D. Ca. 1988)). "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764-765 (9th Cir. 2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F.Supp. 1437, 1439 (M.D. Fla. 1998)). "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[] in the alleged fraudulent scheme." *Swartz*, 476 F.3d at 765 (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989)).

Moreover, in a fraud action against a corporation, a plaintiff must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.* 2 Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861 (1991).

The elements of a California fraud claim are: (1) misrepresentation (false representation, concealment or nondisclosure); (2) knowledge of the falsity (or "scienter"); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court*, 12 Cal.4th 631, 638, 49 Cal.Rptr.2d 377 (1996). The same elements comprise a cause of action for negligent misrepresentation, except there is no requirement of intent to induce reliance. *Caldo v. Owens-Illinois, Inc.*, 125 Cal.App.4th 513, 519, 23 Cal.Rtpr.3d 1 (2004).

"[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and specifically, all of the elements of the cause of action. *Conrad v. Bank of America*, 45 Cal.App.4th 133, 156, 53 Cal.Rptr.2d 336 (1996). There must be a showing "that the defendant thereby intended to induce the plaintiff to act to his detriment in reliance upon the false representation" and "that the plaintiff actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment."

*Conrad*, 45 Cal.App.4th at 157, 53 Cal.Rptr.2d 336.

The complaint is severely lacking and fails to satisfy F.R.Civ.P. 9(b) "who, what, when, where and how" requirements as to defendants. The complaint makes no effort to allege specific misrepresentations or names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written. The complaint lumps all defendants without differentiating them. The complaint fails to establish fraud elements. The fraud allegations do not target particular defendants, and the complaint's global approach is unsatisfactory. The fraud claim's deficiencies are so severe to suggest no potential improvement from an attempt to amend.

## Untrue Or Misleading Statements

The SAC's (fifth) untrue or misleading statement claim attempts to allege violation of California's Unfair Competition Law ("UCL"), California Business and Professions Code sections 17200 ("section 17200") and 17500 ("section 17500"). The SAC's (fifth) untrue or misleading statements claim appears to allege a section 17500 violation "by making or disseminating untrue or misleading statements . . . with intent to induce Plaintiff [sic] to enter into the LOANS." The claim attributes as "untrue and misleading" statements that defendants "were a mortgage loan expert that Plaintiff [sic] could rely on in obtaining a LOAN that was appropriate based upon their financial circumstances."

Defendants fault the untrue or misleading statement claim's failure to allege facts or circumstances to specify what and how statements were false or misleading.

Section 17500 renders unlawful for any person to make or disseminate a statement concerning services "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Under section 17500, "a statement is false or misleading if members of the public are likely to be deceived." *Chern v. Bank of America*, 15 Cal.3d 866, 876, 127 Cal.Rptr. 110 (1976).

The untrue or misleading statements claim lacks allegations to identify a misstatement or likely public deception. The claim is conclusory and vague and fails to allege necessary facts to support a section 17500 violation. "A plaintiff alleging unfair business practices under these statutes [UCL] must

12

state with reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's of California, Inc.*, 14 Cal.App.4th 612, 619, 17 Cal.Rptr.2d 708 (1993). The SAC fails to satisfy UCL pleading requirements.

### Unfair Competition

The (sixth) unfair competition claim also attempts to allege an UCL violation, specifically a section 17200 violation that defendants made "untrue and misleading representations that Defendants could be trusted to sell Plaintiffs LOANS that was [sic] appropriate to their financial condition."

Defendants fault the unfair competition claim's lack of necessary elements.

The UCL prohibits "unlawful" practices "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal.App.4th 832, 838, 33 Cal.Rptr.2d 548 (1999). According to the California Supreme Court, the UCL "borrows" violations of other laws and treats them as unlawful practices independently actionable under the UCL. *Farmers Ins. Exchange v. Superior Court,* 2 Cal.4th 377, 383, 6 Cal.Rptr.2d 487 (1992).

"Unfair" under the UCL "means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cal-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 187, 83 Cal.Rptr.2d 548 (1999).

"The California Supreme Court has held that 'something more than a single transaction,' either on-going wrongful business conduct or a pattern of wrongful business conduct, must be alleged in order to state a cause of action under the Unfair Business Practices Act." *Newman v. Checkrite California*, 912 F.Supp. 1354, 1375 (E.D. Ca. 1995).

California Business and Professions Code section 17204 limits standing to bring a UCL claim to specified public officials and a private person "who has suffered injury in fact and has lost money or property as a result of the unfair competition."

Defendants are correct that the unfair competition claim is unclear. The SAC fails to support plaintiffs' standing in the absence of allegations of alleged lost money or property. The unfair competition claim identifies no borrowed violated law and is premised on a vague statement of defendants' trustworthiness. The unfair competition claim points to no wrongful business practice or

pattern and appears isolated to plaintiffs' dealings with defendants. At best, the unfair competition claim rests on an isolated event as to plaintiffs' loans, not ongoing wrongs to warrant the claim's dismissal.

### Federal Preemption Of UCL Claims

Plaintiffs' UCL claims are subject to federal preemption.

"[B]ecause there has been a history of significant federal presence in national banking, the presumption against preemption of state law is inapplicable." *Bank of America v. City and County of S.F.*, 309 F.3d 551, 559 (9th Cir. 2002), *cert. denied*, 538 U.S. 1069, 123 S.Ct. 2220 (2003). In *Silvas v. E*Trade Mortgage Corp.,* 421 F.Supp.2d 1315 (S.D. Cal. 2006), *aff'd*, 514 F.3d 1001 (9th Cir. 2008), a fellow district court held that the Home Owners Loan Act ("HOLA"), 12 U.S.C. §§ 1461, et seq., preempted claims under the UCL if the UCL claims were predicated on TILA. *See Reyes v. Downey Saving & Loan Ass'n*, 541 F.Supp.2d 1108, 1115 (C.D. Cal. 2008). The court reasoned that "when federal law preempts a field, it does not leave room for the states to supplement it." *Silvas*, 421 F.Supp.2d at 1319 (citing *Rice v. Santa Fe Elev. Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). The Ninth Circuit affirmed the district court and held that plaintiff's section 17200 and 17500 claims were preempted. *Silvas v. E*Trade Mortgage Corp.*, 514 F.3d at 1006.

States may not avoid preemption by adopting federal laws and adding supplemental remedies. *Reyes*, 541 F.Supp.2d at 1115; *see Public Util. Dist. No. 1 of Grays Harbor Cty. Wash. v. IDACOR, Inc.*, 379 F.3d 641, 648-49 (9th Cir.2004). "Plaintiffs' use of the UCL as predicated on TILA is preempted." *Reyes*, 541 F.Supp.2d at 1115; *see Nava v. Virtual Bank*, 2008 WL 2873406, at *7 (E.D. Cal. 2008) ("[F]or the same reason that plaintiff's UCL claim based on unfair or fraudulent business practices is preempted by federal law, plaintiff's UCL claim based on violation of TILA is also preempted. Moreover, plaintiff's UCL claim based on violation of TILA is also preempted by federal law since its application would supplement TILA by changing TILA's framework.")

Plaintiffs' UCL claims appear tied to TILA or other federal law to render their UCL claims preempted. Plaintiffs are unable to avoid preemption in the guise of an UCL claim, especially given the vague, conclusory allegations of unfair practices.

In addition, since plaintiffs' federal statutory claims are time barred, their UCL claims based on federal statutory violations likewise fail. "A court may not allow plaintiff to 'plead around an absolute

bar to relief simply by recasting the cause of action as one for unfair competition.' " *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir.2000); *see Rubio v. Capital One Bank (USA)*, 572 F.Supp.2d 1157, 1168 (C.D. Cal. 2008) (since plaintiff's TILA claim failed, plaintiff's UCL claim predicated on TILA likewise failed). The time bar of plaintiffs' federal statutory claims bolsters dismissal of their UCL claims to prevent circumvention of federal statutory limitations periods.

## Forcible Entry

The SAC's (seventh) forcible entry claim alleges that "Defendants forcibly entered the PROPERTY by way of the BLAIN CONSTRUCTION employee's acting as agent on behalf of the Defendants without the sheriff, without court order, or without valid writ possession. Defendants and/or through its [sic] agent broke the front and back door and improperly took possession of the PROPERTY."

This Court and defendants presume that plaintiffs attempt to allege forcible detainer.

California Code of Civil Procedure section 1160 provides that a person "is guilty of forcible detainer" if he/she "[b]y force, or by menaces and threats of violence, unlawfully holds and keeps the possession of any real property, whether the same was acquired peaceably or otherwise."

Defendants correctly point to the absence of allegations that defendants unlawfully held or kept possession of the property. The forcible entry claim merely references replacement of personal property. In *Davies v. Stark*, 25 Cal.App. 519, 521, 522, 144 P. 315 (1914), the California Court of Appeal explained:

> An allegation of forcible entry alone, unaccompanied by an allegation showing that defendant detains possession of the premises so forcibly entered, will not warrant an action . . . for forcible entry and detainer . . . In the absence of such allegation a fact necessary to constitute the cause of action must be taken as having no existence. . . . It was further said in *Bell v. Haun*, 9 Cal. App. 41, [97 Pac. 1126]: "The real gist of the action is the detention of the premises, from the one entitled thereto, and this whether the detainer be forcible as defined by section 1160 of the Code of Civil Procedure, or unlawful, within the meaning of section 1161, or the retention of possession without force and violence by one who has by force and violence entered upon the possession of another." In 19 Cyc., p. 1156, it is said: "In all actions, brought under forcible entry and detainer statutes, it is necessary to allege a detention of the premises at the time of the institution of the action; for, in the absence of such detention, the complaint would amount to no more than a trespass." (Citations omitted.)

The SAC fails to satisfy elements of forcible detainer to warrant dismissal of the forcible entry claim.

**Trespass**

The complaint's (eighth) trespass claim repeats the allegation that "Defendants forcibly entered the PROPERTY by way of the BLAIN CONSTRUCTION employee's acting as agent on behalf of the Defendants without the Sheriff, without court order, or without valid writ possession. Defendants and/or through its [sic] agent broke the front and back door and improperly took possession of the PROPERTY."

"Trespass to property is the unlawful interference with its possession." 5 Witkin, Summary of Cal. Law (10 ed. 2005), Torts, § 693, p. 1018. Trespass elements are:

1. Plaintiff owned the property;
2. Defendant intentionally, recklessly or negligently entered plaintiff's property;
3. Plaintiff did not give permission for the entry;
4. Plaintiff was actually harmed; and
5. Defendant's entry was a substantial factor in causing plaintiff's harm.

CACI 2000, p. 1159 (2009).

Plaintiffs appear to rely on the entry of Blain Construction as defendants' agent. However, the trespass claim belies an agency relationship by alleging that "BLAIN CONSTRUCTION Company is chasing all homes they built, to re-buy it back at pennies for dollar and then re-sale it at lower prices that they sale it as the first buyers." The SAC lacks facts to support an agency relationship between defendants and Blain Construction to support a trespass claim. The SAC points to no trespass by defendants to warrant dismissal of the trespass claim.

**Declaratory Relief**

The (ninth) declaratory relief claim seeks "a judicial determination to stop Foreclosure proceedings until all causes of action are clear and under color of Law" based on need "to determine the respective rights and duties of the parties with respect to the PROPERTY."

Defendants contend that declaratory relief is improper in the absence of need "to guide future conduct" in that plaintiffs seek to adjudicate defendants' previously established security interest in the property.

Since defendants removed plaintiffs' action from state court, the declaratory relief claim appears

subject to evaluation under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201.[4] The DJA and its 28 U.S.C. § 2201(a) provides in pertinent part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

The DJA's operation "is procedural only." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461, 463 (19 ). A DJA action requires a district court to "inquire whether there is a case of actual controversy within its jurisdiction." *American States Ins. Co. v. Kearns*, 15 F.3d 142, 143-144 (9th Cir. 1994).

As to a controversy to invoke declaratory relief, the question is whether there is a "substantial controversy, between parties having adverse legal rights, or sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512 (1941). The United States Supreme Court has further explained:

> A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. . . . The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Haworth*, 300 U.S. at 240-241, 57 S.Ct. at 464 (citations omitted).

Plaintiffs attempt to manufacture a declaratory relief claim on grounds that the parties differ as to their "respective rights and duties" as to the property. The SAC does not establish an independent actual or present controversy which is definite and concrete. As such, there is no actual controversy subject to declaratory relief in that plaintiffs' potential relief, if any, lies elsewhere. A declaratory relief action "brings to the present a litigable controversy, which otherwise might only be tried in the future." *Societe de Conditionnement v. Hunter Eng. Co., Inc.*, 655 F.2d 938, 943 (9th Cir. 1981).

The key problem is that the declaratory relief claim fails to articulate an available judicial declaration. It merely points to a purported controversy regarding the parties' different positions as to

---

[4] This Court is uncertain why defendants refer to California Code of Civil Procedure section 1060.

the property. Without more, there is no actual controversy subject to declaratory relief, especially given the failure of plaintiffs' claims. Nothing substantiates declaratory relief to warrant the claim's dismissal.

### Quiet Title

The SAC's (tenth) quiet title claim alleges that defendants "have no legal or equitable right, claim, or interest in said PROPERTY or perfected chain of Tile [sic]." The quiet title claim seeks "a declaration that the Title to the Property is vested in Plaintiffs alone" in that defendants "have no estate, right, title, or interest in the subject property."

Defendants fault the quiet title claim's lack of necessary elements. California Code of Civil Procedure section 760.010 provides for an action "to establish title against adverse claims to real or personal property or any interest therein." California Code of Civil Procedure section 761.020 mandates a "verified" complaint for a quiet title action to include:

1. A legal description and street address of the subject real property;
2. The title of plaintiff as to which determination is sought and the basis of the title;
3. The adverse claims to the title of the plaintiff against which a determination is sought;
4. The date as of which the determination is sought; and
5. A prayer for the determination of the title of the plaintiff against the adverse claims.

Defendants correctly note the absence of allegations as to adverse claims and determination date. As a reminder, the first and second DOTs encumber the property to secure LBMC's first and second loans. Chase acquired assets and succeeded in LBMC's interest. Chase assigned to Deutsche all beneficial interest in the first DOT. As such, defendants have held a security interest in the DOT, not an adverse claim in the property. A deed of trust "carries none of the incidents of ownership of the property, other than the right to convey upon default on the part of the debtor in payment of his debt." *Lupertino v. Carbahal*, 35 Cal.App.3d 742, 748, 111 Cal.Rptr. 112 (1973). Moreover, the quiet title remedy "is cumulative and not exclusive of any other remedy, form or right of action, or proceeding provided by law for establishing or quieting title to property." Cal. Code Civ. Proc., § 760.030. As such, plaintiffs are not entitled to quiet title with the failure of their other claims.

### Conversion

The (eleventh) conversion claim alleges that plaintiffs "sustained damages to PROPERTY, and

18

deprivation of the use and quiet enjoyment of the PROPERTY, as a result of Defendants' conduct."

Defendants challenge the conversion claim's absence of necessary elements.

"Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Burlesci v. Petersen*, 68 Cal.App.4th 1062, 1065, 80 Cal.Rptr.2d 704 (1998).

"To establish a conversion, plaintiff must establish an actual interference with his ownership or right of possession. . . . Where plaintiff neither has title to the property alleged to have been converted, nor possession thereof, he cannot maintain an action for conversion." *Del E. Webb Corp. v. Structural Materials Co.,* 123 Cal.App.3d 593, 610-611, 176 Cal.Rptr. 824 (1981).

The SAC fails to identify the converted property and plaintiffs' ownership or right to possess such property. In such absence, defendants' wrongful act or disposition of property rights and plaintiffs' damages are unidentifiable. The conversion claim lacks facts to support the tort and fails.

**Attempt At Amendment And Malice**

Plaintiffs' claims are incognizable, lack necessary elements or barred as a matter of law. Plaintiffs are unable to cure their claims by allegation of other facts and thus are not granted an attempt to amend, especially given that they proceed on their third complaint.

Moreover, this Court is concerned that plaintiffs have brought this action in absence of good faith and that plaintiffs exploit the court system solely for delay or to vex defendants. The test for maliciousness is a subjective one and requires the court to "determine the . . . good faith of the applicant." *Kinney v. Plymouth Rock Squab Co.*, 236 U.S. 43, 46 (1915); *see Wright v. Newsome*, 795 F.2d 964, 968, n. 1 (11th Cir. 1986); *cf. Glick v. Gutbrod*, 782 F.2d 754, 757 (7th Cir. 1986) (court has inherent power to dismiss case demonstrating "clear pattern of abuse of judicial process"). A lack of good faith or malice also can be inferred from a complaint containing untrue material allegations of fact or false statements made with intent to deceive the court. *See Horsey v. Asher*, 741 F.2d 209, 212 (8th Cir. 1984). An attempt to vex or delay provides further grounds to dismiss this action.

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1. DISMISSES this action with prejudice against defendants JPMorgan Chase Bank, N.A. and Deutsche Bank National Trust Company; and
2. DIRECTS the clerk to enter judgment in favor of defendants JPMorgan Chase Bank, N.A. and Deutsche Bank National Trust Company and against plaintiffs Andes Vega and Fabiola Vega and to close this action.

IT IS SO ORDERED.

**Dated:   August 25, 2009**                    **/s/ Lawrence J. O'Neill**
                                                        UNITED STATES DISTRICT JUDGE